IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARKEL INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **REBECCA YOUNG,** *also known as* | : | No. 11-1472 |
| **REBECCA HOLLAND; BARBARA** | : | |
| **WEIDMAN; and THOMAS WEIDMAN** | : | |

**NORMA L. SHAPIRO, J.**                                                                 **JUNE 12th, 2012**

## MEMORANDUM

Plaintiff Markel Insurance Company ("Markel") filed an action for declaratory judgment under 28 U.S.C. § 2201 *et seq.* against defendants Rebecca Young, a/k/a Rebecca Holland ("Young"), Barbara Weidman ("Weidman"), and Thomas Weidman. The parties dispute whether Markel has a duty to defend or indemnify Young in the underlying state court action *Weidman v. Young*, No. 10-16356 (Pa. Ct. Com. Pl.). Young has asserted counterclaims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and for breach of contract, bad faith,[1] and declaratory relief. The Weidmans have also asserted a counterclaim for declaratory relief.

Markel is a Virginia corporation, defendants are residents of Pennsylvania, and the amount in controversy exceeds $75,000; the court has diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants reside in the Eastern District of Pennsylvania and the events giving rise to the underlying action occurred there; venue is proper under 28 U.S.C. § 1391(b). Before the court are the parties' cross-motions for summary judgment on the claims for declaratory relief. The court

---

[1] The court severed and stayed the counterclaim for bad faith, pending disposition of the parties' cross-motions for summary judgment.

1

will grant summary judgment in favor of Markel because the employer liability exclusion clause in the Markel insurance policy excludes coverage for the underlying action; defendants' cross-motions for summary judgment will be denied and their counterclaims will be dismissed.

I.  **Background**

Markel issued a commercial general liability lines insurance policy, no. 8502CC304124-0, and an excess umbrella insurance policy, no. 4602CC304128-0, to named insureds "Creative Care Childcare Centers, JHA Services, Inc. DBA & Rebecca Young ATIMA." Compl., Ex. B. The insurance policies were in force from October 1, 2007, through October 1, 2008. *Id.*[2]

Creative Care Childcare Center ("Creative Care") provides child care services at multiple locations and is owned by JHA Services, Inc. ("JHA"). Young Dep. Tr. 12:19-13:10. Weidman was a daycare worker at two Creative Care locations, including 955 East Main Street, Collegeville, PA 19426 ("955 East Main"). Weidman Dep. Tr. 8:16-9:4. Young, the owner and president of JHA, owns the property at 955 East Main. Young Dep. Tr. 8:20-9:10, 10:22-11:6. Young, individually and as president of JHA, leases 955 East Main to JHA under a commercial lease. Young Mot. Summ. J., Ex. B.

On August 19, 2008, Weidman was injured when her right foot went through a wooden floorboard on the front porch of 955 East Main. Weidman Dep. Tr. 26:5-19. Weidman and her husband, Thomas Weidman, filed a complaint against Young in the Court of Common Pleas of Montgomery County, Pennsylvania; they asserted claims of negligence and loss of consortium for

---

[2]The excess umbrella insurance policy provides coverage when the limits of the general liability lines insurance policy are exceeded. The underlying action does not involve a claim for damages in excess of the limits of the general liability lines insurance policy and the two policies are identical in most relevant aspects; the court will address only the general liability lines insurance policy.

an amount in excess of $100,000, plus interest, delay damages, and costs.  Compl., Ex. A.  Weidman alleged Young, in her individual capacity, negligently maintained 955 East Main.  *Id*.

The court permitted the parties to file cross-motions for summary judgment without conducting discovery.  Following oral argument on the cross-motions for summary judgment, the court permitted the parties to depose Young and Weidman and file supplemental cross-motions for summary judgment.

## II.    Discussion

### 1.    Cross-Motions for Declaratory Relief

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant must identify those portions of the record showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Cross-motions for summary judgment "are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing

party waives judicial consideration and determination whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

The court must determine the governing state law. A federal district court sitting in diversity must apply the choice-of-law rules of the state where it sits. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 170 (3d Cir. 2011). Under Pennsylvania law, the law of the state in which an insurance policy is issued and delivered governs the action. *Bennison v. Nationwide Mut. Ins. Co.*, 42 Pa. D. & C.4th 466, 473 (Pa. Ct. Com. Pl. 1999). The named insureds procured the insurance policy in Pennsylvania; Pennsylvania law governs the action.

The court interprets an insurance policy as a matter of law when the facts are not in dispute. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). The parties do not dispute that the insurance policy, without consideration of limitations and exclusions, provides coverage for damages suffered because of bodily injury. The insurance policy provides:

> We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this Insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this Insurance does not apply.

Compl., Ex. B. There is no dispute that Weidman's injury on August 19, 2008, is within the insurance policy period of October 1, 2007, through October 1, 2008. *Id*. Weidman claims $100,000 in damages, plus interest, delay damages, and costs in the underlying action; this amount is within the limit of the general liability lines insurance policy. *Id*.

The issue is whether the limitations or exclusions in the insurance policy bar coverage for the underlying action. The parties dispute whether: (1) Young is insured in her individual

capacity under the insurance policy; (2) Weidman's injury arose out of the operations of Creative Care; and (3) the employer liability exclusion clause in the policy precludes coverage of the underlying action.

### A. Parties Insured Under the Policy

Markel contends the insurance policy does not provide coverage for the underlying action because Young is insured in her capacity as a director, officer, shareholder, or employee of Creative Care, but is being sued in the underlying action in her individual capacity as the owner of 955 East Main.

The clear and unambiguous terms of an insurance policy are construed according to their plain and ordinary meaning. *Linn*, 766 F.2d at 760-61. "Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." *McMillan v. State Mut. Life Ins. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990).

The insurance policy declaration lists "Creative Care Childcare Centers, JHA Services, Inc. DBA & Rebecca Young ATIMA" as named insureds; the parties agree Young is a named insured. Compl., Ex. B. The inclusion of Young as a separate and distinct named insured supports a finding that she is insured in her individual capacity. *See Carpenter v. Fed. Ins. Co.*, 637 A.2d 1008, 1011-12 (Pa. Super. Ct. 1994). The acronym "DBA" is used for the phrase "doing business as." *See, e.g.*, *Fabral, Inc. v. B&B Roofing Co., Inc.*, 2011 WL 4528364, at *5 (E.D. Pa. Sept. 30, 2011). The insurance policy provides coverage to named insureds Creative Care and *JHA doing business as and Rebecca Young* ATIMA, a nonsensical phrase. The list of named insureds in the insurance policy declaration is ambiguous and must be construed in

Young's favor.

The acronym "ATIMA" is used for the phrase "as their interests may appear." *Giabocetti v. Ins. Placement Facility*, 457 A.2d 853, 857 (Pa. 1983). The phrase "as their interests may appear," means "the parties are entitled to various shares in the proceeds [of an insurance policy], if they are entitled to any proceeds at all." *Campbell v. Royal Indem. Co. of N.Y.*, 389 A.2d 1139, 1142 n.5 (Pa. Super. Ct. 1978). The inclusion of the acronym ATIMA after Young's name in the insurance policy declaration limits her interest in the insurance policy to her insurable interest in the property. *See Turner Constr. Co. v. John B. Kelly Co.*, 442 F. Supp. 551, 554 (E.D. Pa. 1976).[3]

Markel concedes the inclusion of ATIMA means "the Policies were intended to provide coverage to Young to the extent she may have had a personal interest in any real property or personal property used in the Child Care without Camp business." Markel Mot. Summ. J., p.7. Young is the owner of 955 East Main and has a personal interest in the property. Although the insurance policy does not state whether Young's personal interest in the property triggers coverage for an underlying lawsuit concerning an injury that occurred on the property, the inclusion of the acronym ATIMA supports a finding that Young is insured in her individual capacity.

The court must pay particular attention to the insurance policy clause concerning who is covered under the policy. *Carpenter*, 637 A.2d at 1011. The section of the insurance policy titled "Who is an Insured" provides coverage for named insureds designated in the insurance policy

---

[3]Some authorities state the acronym ATIMA requires all insured parties to join in an action to enforce the insurance policy, to the extent each party has an interest in enforcing the insurance policy. *See Bowers Co. v. London Assurance Corp.*, 90 Pa. Super. 121 (Pa. Super. Ct. 1927); 17 Couch on Ins. § 243:52 (2011). The court need not address whether Young is required to join the other named insureds in her counterclaims to enforce the policy because judgment will be entered in favor of Markel.

declarations as individuals, "but only with respect to the conduct of a business of which you are the sole owner." Compl., Ex. B.

Young, a named insured, is an individual and the sole owner of JHA, a named insured that conducts business under the name Creative Care, another named insured. Young Dep. Tr. 10:22-24, 12:19-13:3. Young is insured with respect to the conduct of JHA and Creative Care. The lease between JHA and Young for 955 East Main requires JHA to "maintain the premises in good and safe condition." Young Mot. Summ. J., Ex. B ¶ 3. Young is insured for personal injury as the owner of JHA if JHA failed to maintain 955 East Main in good and safe condition while conducting business, regardless of whether Young is being sued in her individual capacity in the underlying action.

### B. Endorsement for Designated Operations

Markel contends the insurance policy does not provide coverage for the underlying action because a policy endorsement limits recovery to injuries arising out of Creative Care's operations, so it does not cover negligence in maintaining the property at 955 East Main. Markel notes Weidman is seeking recovery for an injury arising out of Young's alleged negligent maintenance of 955 East Main.

The insurance policy contains a "Limitation of Coverage to Designated Operations" endorsement:

**SCHEDULE**

**Description and Location of Operations:**
The Child Care without Camp, Creative Care Childcare Centers JHA Services, Inc. DBA & Rebecca Young ATIMA, located at 955 E Main Street Collegeville, PA 19426 including off site operations arising out of this location.
. . . .
This insurance applies only to "bodily injury", "property damage",

> "personal injury", "advertising injury" and medical expenses including products and completed operations, arising out of operations described in the Schedule.

Markel Mot. Summ. J., Ex. D.

When interpreting a commercial general liability policy limiting recovery to losses arising out of business operations, "a court considers whether there is a causal connection between the property and the underlying incident." *Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky*, 889 A.2d 557, 563 (Pa. Sup. Ct. 2005). If the injury would not have occurred "but for" the business operations, a court may find a causal connection between the business operations and risks incidentally related to those operations. *Id.*; *see also* 94 Couch on Ins. § 129:2 (2011). The policy does not define "operations." "Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). The dictionary defines "operation" as "a doing or performing esp. [sic] of action: work, deed" and as "the doing or performing of a practical work." Webster's Third New International Dictionary 1581 (1993).

The court has found the policy covers Young in her individual capacity; the endorsement limits coverage to injuries arising out of Creative Care, JHA, and her operations at 955 East Main and off site locations, including injuries arising out of the maintenance of 955 East Main. In the underlying complaint, Weidman alleges a direct causal relationship between her injury and Young's negligent maintenance of 955 East Main. Compl., Ex. A ¶¶ 6-12. The policy endorsement limits coverage to the exact type of injury alleged by Weidman.

    C.    Employer Liability Exclusion Clause

Markel contends the employer liability exclusion clause in the insurance policy precludes

coverage because Weidman, an employee of named insured Creative Care, was injured during the course of her employment. Defendants contend the exclusion clause does not apply because Weidman was not an employee of Young, the insured seeking coverage. Defendants also contend the severability clause in the insurance policy limits this exclusion clause to actions by an employee asserting a claim for injury against his or her employer, *i.e.*, the exclusion clause would apply only to an underlying action by Weidman against Creative Care.

"[A]n insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." *Linn*, 766 F.2d at 760. The insurer bears the burden of proving the underlying action falls within an exclusion in the insurance policy. *Id*. "Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Id*. at 761.

The employer liability exclusion clause provides:

> This insurance does not apply to:
> . . . .
> **e. Employer's Liability**
>   "Bodily injury" to:
>   (1) An "employee" of the Insured arising out of and in the course
>       of:
>         (a) Employment by the Insured; or
>         (b) Performing duties related to the conduct of the Insured's
>             business;
>  . . . .
>   This exclusion applies:
>   (1) Whether the insured may be liable as an employer or in any other
>       capacity; and
>  . . . .
>   This exclusion does not apply to liability assumed by the insured
>   under an "Insured contract".

Compl., Ex. B.

The severability clause provides:

> **Separation of Insureds**
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:
> a. As if each Named Insured were the only Named Insured; and
> b. Separately to each Insured against whom claim is made or "suit" is brought.

*Id*.

This court is bound by a decision by Pennsylvania's highest court, when applying Pennsylvania law to interpret an employer liability exclusion clause. *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994). An employer liability exclusion clause precludes coverage for an injury suffered by an employee of *any* named insured, regardless of whether the employee works for the named insured seeking coverage. *Pa. Mfrs. Ass'n Ins. Co. v. Aetna Cas. and Sur. Ins. Co.*, 233 A.2d 548, 550-51 (Pa. 1967) ("*PMA*").

One Pennsylvania appellate court distinguished *PMA* when an employee of one named insured brought an action against another named insured on the same insurance policy. *Luko v. Lloyds of London*, 573 A.2d 1139, 1140-41 (Pa. Sup. Ct. 1990), *appeal denied*, 526 Pa. 636 (Pa. 1990). The *Luko* case found coverage for two reasons: (1) the insurance policy was amended to include injured employees of the named insured in the definition of "persons insured"; and (2) the insurance policy contained a severability clause. *Id*. at 1144.

Unlike the insurance policy in *Luko*, the Markel policy does not include an amendment expressly providing coverage for employees of a named insured. *N. Wales Water Auth. v. Aetna Life and Cas.*, 1996 WL 627587, at *8 n.11 (E.D. Pa. Oct. 30, 1996), *aff'd*, 133 F.3d 910 (3d Cir. 1997). The Markel insurance policy provides that the exclusion clause applies "[w]hether the

insured may be liable as an employer *or in any other capacity*." Compl., Ex. B (emphasis added).

Weidman is an employee of named insured Creative Care, but has brought an action against named insured Young in her individual capacity. The employer liability exclusion clause clearly and unambiguously precludes coverage of the underlying action, regardless of whether Weidman is an employee of Young. *See, e.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 Fed. App'x 506, 509-10 (3d Cir. 2011) (unpublished) (employer liability exclusion clause precluded coverage when injured employee of one named insured sued another named insured); *Roosevelt's Inc. v. Aurich Am. Ins. Co.*, 2005 WL 1240698, at * 2 (Pa. Ct. Com. Pl. May 23, 2005) (same).

A severability clause in an insurance contract does not change the meaning of the word "insured" in the employer liability exclusion clause to "insured being sued." *PMA*, 233 A.2d at 550-52. The Court of Appeals has rejected *Luko's* reliance on a severability clause in the insurance policy to provide an exception to the exclusion clause. *See, e.g.*, *Scottsdale Ins. Co. v. City of Easton*, 379 Fed. App'x 139, 148-49 (3d Cir. 2010) (unpublished); *Brown & Root Braun, Inc. v. Bogan Inc.*, 54 Fed. App'x 542, 547-49 (3d Cir. 2002) (unpublished). Although the severability clause in the Markel policy is more like the severability clause in the *Luko* policy than in the *PMA* policy, there is no material difference between the Markel and the *PMA* severability clauses. *See, e.g.*, *Scottsdale*, 379 Fed. App'x at 150; *Brown*, 54 Fed. App'x at 548; *Roosevelt's*, 2005 WL 1240698, at *2. The severability clause in the Markel policy does not modify the definition of "insured" in the exclusion clause.

Young contends the exclusion clause does not preclude coverage because the lease between Young and JHA is an "insured contract" exception to the exclusion clause. The insurance policy provides the exclusion clause does not apply "to liability assumed by the insured under an 'Insured

contract'." Compl., Ex. B. The insurance policy defines insured contract as a "contract for a lease of premises." *Id*. Markel concedes the commercial lease agreement between Young and JHA "is a type of agreement that qualifies as an insured contract." Resp. Young Cross-Mot. Summ. J., p.9. The insured contract exception applies to liability "assumed by the insured."

> The lease between Young, as lessor, and JHA, as lessee, provides:
>
>> **Indemnification of Lessor**. Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

Young Mot. Summ. J., Ex. B ¶ 10.

This indemnification provision states JHA, as lessee, will assume liability for Young, the lessor, not *vice versa*. Young, not JHA, is seeking coverage from Markel for her potential liability in the underlying action; she has not assumed liability for another party under an insured contract. The lease does not allow an insured contract exception to the exclusion clause.

Even if the insured contract exception to the exclusion clause applied, JHA has not assumed liability for employee injuries in the indemnification provision of the lease. Under Pennsylvania law, when an employee suffers injury, the employer:

> [S]hall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be *expressly provided for in a written contract* entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481(b) (emphasis added). One Pennsylvania appellate court, interpreting § 481(b), stated:

> The intent to indemnify against claims by employees of the alleged indemnitor, however, must clearly appear from the terms of the agreement. . . . [C]ontracting parties must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own

12

> negligence which result in harm to the employees of the named employer. Absent this level of specificity in the language employed in the contract of indemnification, the Workmen's Compensation Act precludes any liability on the part of the employer.

*Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 307-09 (Pa. Sup. Ct. 1993).

The general language in the indemnification provision of the lease between JHA and Young, *e.g.*, "any damage or injury," "any other person," and "any claims for damages," does not expressly state that JHA will indemnify Young from liability for acts of her negligence resulting in employee injuries. *Id*. at 307; *see also Jones v. S.E. Pa. Trans. Auth.*, 1993 WL 410222, at *4 (E.D. Pa. Sept. 17, 1993) ("'any person' or 'persons or persons' does not rise to the level of specificity that is required under section 481(b)."); *Morgan v. Harnischfeger Corp.*, 791 A.2d 1273, 1275, 1278-79 (Pa. Commw. Ct. 2002) (indemnity provision language to "hold harmless" for "any damage or injury" was "precisely the type of boilerplate language that our sister court refuses to uphold."). The insured contract exception to the employer liability exclusion clause does not apply. *N. Wales*, 1996 WL 627587, at *5-6.

Young contends there is a disputed issue whether Weidman was injured in the course of her employment. The employer liability exclusion clause applies to employee injuries "arising out of and in the course of" employment. Compl., Ex. B. An employee suffers an injury "arising out of" employment when the injury is "causally connected with, not proximately caused by" the employment. *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967) (employer liability exclusion clause applied when employee killed while digging trench for employer). An injury may be causally connected with employment when an employee is injured at the workplace, regardless of whether the employee was actually working at the time of the injury. *Scottsdale Ins. Co. v. Scholl-Fassnacht*, 2000 WL 875693, at *3 (E.D. Pa. June 26, 2000), *aff'd*, 261 F.3d 493 (3d Cir.

13

2001).

Markel submitted an affidavit from Weidman in which she averred she was injured at 955 East Main when she moved a "roller coaster ride" on the porch for the children's safety.  Markel Supplemental Mot. Summ. J., Ex. I.  In her deposition, Weidman stated: (1) the director (Jennifer Perry) encouraged her to take the children on the porch to play with the toys located there, Weidman Dep. Tr. 19:3-6, 21:1-19; (2) she took the children on the porch every day, weather permitting, between 10:00 a.m. and 11:00 a.m., *id*. at 23:3-16; and (3) she was injured at approximately 10:20 a.m.  *Id*. at 25:9-26:19.

Young does not offer any evidence refuting Weidman's testimony that she was injured in the course of her employment.  Young repeatedly acknowledged that Weidman was injured while working at Creative Care and received worker's compensation.  Young Dep. Tr. 21:5-22:7, 26:10-24, 33:23-34:6, 42:5-13; Markel Supplemental Mot. Summ. J., Ex. L.  Young contends Weidman's testimony is uncorroborated because only infants were on the porch when Weidman was injured.  Young Supplemental Mot. Summ. J., p. 3.  Young stated she did not know whether Weidman was working while on the porch and that "staff members typically stand there to use their cell phone to get reception."  Young Dep. Tr. 26:10-27:5.

Based on the record and Young's failure to offer any evidence to the contrary, it is clear Weidman's injury was causally connected with and arose from the course of her employment.  She was an employee of Creative Care and injured at her workplace.  Even if Weidman were using her cellphone on the porch, which she denies, Weidman Dep. Tr. 59:13-18, her injury would be causally connected with her employment.  *Scholl-Fassnacht*, 2000 WL 875693, at *3.  She would not have been on the porch of 955 East Main were it not for her employment with Creative Care.

There is no genuine dispute of material fact; Weidman was injured during the course of her employment.

### D. Worker's Compensation Exclusion Clause

When interpreting the insurance policy, the court must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *401 Fourth St., Inc. v. Investors Ins. Grp.*, 583 Pa. 445, 454 (Pa. 2005). The court should interpret an insurance policy to avoid ambiguities. *J.C. Penny Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). JHA and Creative Care insured their employees with a worker's compensation policy. Young Dep. Tr. 19:1-13, 24:10-25:6. If JHA and Creative Care intended for the Markel policies to cover employee actions against named insureds for work-related injuries, JHA and Creative Care would have been paying for duplicative coverage. *See PMA*, 233 A.2d at 551.

The insurance contract contains a worker's compensation exclusion clause for medical expenses:

> **2. Exclusions**
> We will not pay expenses for "bodily injury":
> . . . .
> **b. Hired Person**
>   To a person hired to do work for or on behalf of any insured or a tenant of any Insured.
> . . . .
> **d. Workers Compensation And Similar Laws**
>   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or similar law.

The parties did not address whether the worker's compensation clause precludes coverage of medical expenses incurred by Weidman. Weidman, an employee of named insured Creative Care, stated she received worker's compensation benefits. Weidman Dep. Tr. 38:6-14. Young

stated JHA had a worker's compensation insurer and Weidman received worker's compensation after JHA filed the necessary paperwork. Young Dep. Tr. 19:1-13, 23:16-22, 24:10-26:9. The Markel policy's workers compensation clause excludes coverage of medical payments for Weidman.

### 2. Young's Counterclaims

The court severed and stayed Young's bad faith counterclaim under 42 Pa. Cons. Stat. § 8371, pending disposition of the cross-motions for summary judgment concerning declaratory relief. Young also asserted breach of contract and UTPCPL, 42 P.S. § 201-1, *et seq*, counterclaims. The parties did not address the counterclaims in the cross-motions for summary judgment.

The parties do not dispute the text of the insurance policy; they dispute the interpretation of that text. Young cannot succeed on the merits of her counterclaims because the court has found Markel's policy denied coverage of the underlying action. No motion practice or trial on the counterclaims is necessary in light of the court's interpretation of the policy. The court will vacate the stay on the counterclaim for bad faith and dismiss all counterclaims.

## III. Conclusion

Summary judgment will be granted in favor of Markel because the employer liability policy excludes coverage of the injury that Weidman suffered in the course of her employment with Creative Care. Markel does not have a duty to defend and indemnify Young in the underlying action. Defendants' motions for summary judgment will be denied. The court will vacate the stay on Young's counterclaim for bad faith and dismiss all counterclaims. An appropriate Order follows.